Filed 3/30/26  In re Dylan B. CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| In re Dylan B., a Person Coming Under the Juvenile Court Law. | B336272 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>Alfredo S.,<br><br>Objector and Appellant. | (Los Angeles County Super. Ct. No. 23CCJP04012A) |

APPEAL from an order of the Superior Court of Los Angeles County, Marguerite Downing, Judge.  Dismissed.

Lauren K. Johnson, under appointment by the Court of Appeal, for Objector and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Jane Kwon, Deputy County Counsel, for Plaintiff and Respondent.

———————————

# INTRODUCTION

Alfredo S. (Father) contends the juvenile court's jurisdiction findings and disposition orders concerning his son Dylan S. must be reversed because the court failed to ensure the Los Angeles County Department of Children and Family Services (the Department) complied with its duties under the Indian Child Welfare Act (25 U.S.C. § 1901 et seq.) (ICWA) to interview Dylan's maternal grandparents about possible Indian ancestry. After the notice of appeal was filed, the juvenile court ordered the Department to interview the grandparents, as well as all available extended family members, and to prepare a report for the court. The appeal is moot because the court has already ordered the Department to do what Father asks us to order. Accordingly, we dismiss the appeal.

# FACTUAL AND PROCEDURAL BACKGROUND

A.      *Procedural History*

The juvenile court sustained the Department's dependency allegations under Welfare and Institutions Code section 300, subdivision (b),[1] that (1) Mother engaged in a violent altercation with two women in Dylan's presence; (2) Mother had a history of substance abuse including marijuana and alcohol, and Father failed to protect Dylan; (3) Mother had mental and emotional problems including diagnoses of anxiety and postpartum depression and had exhibited bizarre and aggressive behaviors and expressed homicidal and suicidal ideations, and Father failed to protect Dylan; (4) Father had a history of abusing

---

[1]      Undesignated statutory references are to the Welfare and Institutions Code.

amphetamine and methamphetamine, and Mother failed to protect Dylan; and (5) Mother and Father had a history of engaging in violent altercations in Dylan's presence, and Mother failed to protect Dylan by allowing Father unlimited access to him.

The court declared Dylan a dependent of the court, removed him from both parents, and ordered reunification services for both parents.

Father timely appealed from the disposition order, and challenges only the Department's compliance with ICWA.

B.    *ICWA Investigation*

Mother initially denied having any Indian ancestry, but at the detention hearing on November 27, 2023, she submitted a form ICWA-020 indicating that D.B., the maternal grandfather, "is or was a member" of the Choctaw Indian tribe. On November 27, the court found Mother may have some Choctaw ancestry and ordered the Department to investigate her claim.

The Department interviewed Mother, who provided the names and address of the maternal grandparents, but Mother indicated she had been estranged from them for over a year due to a restraining order. She also provided the name of the maternal great-great-grandfather, along with the limited information that he had died on a Choctaw Indian reservation. Mother said she was unable to provide additional details or identify other family members who may have knowledge of possible Indian heritage. On November 20, maternal aunt N.A. denied any Indian ancestry, and on December 6, Mother's godmother stated she was unaware the family had any Indian ancestry.

3

On December 8, 2023, the Department sent the Choctaw tribe a notice of child custody proceedings using Judicial Council form ICWA-030 that included information regarding Dylan's family, including Mother, Father, the maternal grandparents, and maternal great-great-grandfather M.K. The form stated M.K. was born in Oklahoma and had died on a Choctaw Indian Reservation.

On December 22, 2023, at his first court appearance, Father submitted an ICWA-020 form claiming he did not have Indian ancestry. The court ordered the Department "to comply with its ongoing ICWA obligations."

On January 11, 2024, the court continued the jurisdiction and disposition hearing at the Department's request because it had not yet received a response from the Choctaw tribe. On January 12, 2024, the Department received a response indicating Dylan and his family members were not enrolled tribe members and were not eligible for enrollment in the Choctaw tribe. When the jurisdiction and disposition hearing went forward on February 14, 2025, the court was in receipt of the Choctaw tribe's letter, but it did not make any finding about whether ICWA applied.

On June 27, 2025, the date of the section 366.22 hearing at which the court terminated the parents' reunification services and ordered adoption as the permanent plan for Dylan, the juvenile court ordered the Department to conduct a further ICWA inquiry, including interviewing the maternal grandparents. The

court also found it did not have reason to know Dylan was an Indian child.[2]

## DISCUSSION

A. *The Duties of Inquiry and Notice Under ICWA, and Father's Contention That the Department Failed To Comply*

"ICWA establishes minimum standards for state courts to follow before removing Indian children from their families and placing them in foster care or adoptive homes." (*In re Dezi C.* (2024) 16 Cal.5th 1112, 1129 (*Dezi C.*).) "To ensure tribes have the opportunity to exercise their rights in dependency

---

[2] Over Father's objection, we grant the Department's request for judicial notice of the June 27, 2025 post-appeal juvenile court order directing the Department to conduct a further ICWA investigation. In opposing the request, Father relies on *In re Zeth S.* (2003) 31 Cal.4th 396, 413, in which the Supreme Court prohibited "consideration of postjudgment evidence of changed circumstances in an appeal of an order terminating parental rights." (*Ibid.*; see also *In re Kenneth D.* (2024) 16 Cal.5th 1087, 1103 [reviewing court may not rely on postjudgment evidence following termination of parental rights to determine juvenile court's ICWA inquiry was sufficient because reviewing court may not substitute its judgment for that of the juvenile court].) However, neither *Zeth S.* nor *Kenneth D.* addressed the propriety of considering a post-appeal court order that renders the appeal moot because it gives the appellant the very relief he or she seeks. (See *In re Salvador M.* (2005) 133 Cal.App.4th 1415, 1422 [distinguishing *Zeth S.* and concluding appellate court may properly consider post-appeal evidence that shows issue on appeal is moot].) We also take judicial notice on our own motion of the court's June 27, 2025 minute order stating ICWA did not apply.

proceedings, an investigation of [whether] a child may have Indian ancestry must be undertaken and notice provided, where appropriate, to the relevant tribes." (*In re T.R.* (2024) 107 Cal.App.5th 206, 218 (*T.R.*); see § 224.2, subd. (a).)

"The juvenile court and child welfare agency 'have "an affirmative and continuing duty" in every dependency proceeding to determine whether ICWA applies by inquiring whether a child is or may be an Indian child.' " (*In re Claudia R.* (2025) 115 Cal.App.5th 76, 84; see § 224.2, subds. (a), (b)(1); *Dezi C.*, *supra*, 16 Cal.5th at pp. 1131-1132.) The duty of inquiry " 'includes, but is not limited to, asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child.' " (*Dezi C.*, at p. 1132, quoting § 224.2, subd. (b); see *T.R.*, *supra*, 107 Cal.App.5th at pp. 218-219.) "Extended family member" refers to any "person who has reached the age of eighteen and who is the Indian child's grandparent, aunt or uncle, brother or sister, brother-in-law or sister-in-law, niece or nephew, first or second cousin, or stepparent." (25 U.S.C. § 1903(2); see § 224.1, subd. (c).)

A duty of further inquiry is triggered if the juvenile court or the Department "has reason to believe that an Indian child is involved in a proceeding, but does not have sufficient information to determine that there is reason to know that the child is an Indian child." (§ 224.2, subd. (e); see *T.R.*, *supra*, 107 Cal.App.5th at p. 219.) That further inquiry requires interviewing, "as soon as practicable," extended family members, contacting the Bureau of Indian Affairs and State Department of Social Services, and contacting "the tribe or tribes and any other

6

person that may reasonably be expected to have information regarding the child's membership, citizenship status, or eligibility." (§ 224.2, subd. (e)(2)(C); see *T.R.*, at p. 219.) If the further inquiry "results in a reason to know the child is an Indian child, then the formal notice requirements of section 224.3 apply." (*In re D.S.* (2020) 46 Cal.App.5th 1041, 1052; accord, *T.R.*, at p. 219; see 25 U.S.C. § 1912(a); § 224.3, subd. (a).) An inadequate initial ICWA inquiry typically requires conditional reversal with directions for the Department to comply with the inquiry requirement of section 224.2. (See *Dezi C.*, *supra*, 16 Cal.5th at p. 1136; accord, *T.R.*, at p. 220.)

Father contends that "Mother identified relatives who she believed had Choctaw Indian ancestry, including the maternal grandparents, who were alive and living in Los Angeles with a known address. There is no indication in the reports that the social worker contacted them to gather information to determine if the child had Indian ancestry." Father contends the Department thus failed to satisfy its duty to inquire of available extended relatives under section 224.2, subdivision (b). Because "the juvenile court failed to ensure [the Department] complied with ICWA and the related statutes," Father asserts "the orders and judgments at the adjudication and dispositional hearings should be reversed to address these issues" on remand.

B. *The Appeal Is Moot*

As stated, while this appeal was pending, the juvenile court ordered the Department to conduct a further ICWA inquiry. On June 27, 2025, the court ordered Mother and Father to provide the Department with contact information for their relatives; ordered the Department to interview or attempt to interview all

7

known and available extended family members, including the maternal grandparents, about whether the child is or may be an Indian child; and ordered the Department to document all its efforts and submit a written report on the results of the interviews or attempts to interview all extended family members. The Department then moved to dismiss the appeal as moot or "not yet ripe for review."

An appeal "becomes moot when events ' "render[ ] it impossible for [a] court, if it should decide the case in favor of [the appellant], to grant him any effect[ive] relief." ' " (*In re D.P.* (2023) 14 Cal.5th 266, 276.) "For relief to be 'effective,' two requirements must be met. First, the plaintiff must complain of an ongoing harm. Second, the harm must be redressable or capable of being rectified by the outcome the plaintiff seeks." (*Ibid.*) "In this context, relief is effective when it 'can have a practical, tangible impact on the parties' conduct or legal status.' " (*Id.* at p. 277.)

Father argues the Department failed to comply with its duty under section 224.2, subdivision (b), to contact the maternal grandparents to seek information about whether Dylan had possible Indian ancestry. The relief Father seeks is reversal of the jurisdiction findings and disposition orders with directions for full compliance with the inquiry provisions of ICWA. However, Father already has the relief he seeks on appeal: The juvenile court has ordered the Department to interview all available extended family members, including the maternal grandparents, and to report the results to the court.

In *In re Baby Girl M.* (2022) 83 Cal.App.5th 635, a case in a similar procedural posture, the court held "all we could order in resolving this appeal is that the Department and juvenile court

8

fulfill their inquiry and notice obligations under ICWA and related California law.  Because that is what the Department is already doing, and because we are not in a position to micromanage that process in this appeal (detailing, for instance, all those who must be interviewed, what they must be asked, and what must be included in any notice to tribes that is required), there is no effective relief we can now provide.  The juvenile court must direct that process, at least in the first instance.  This appeal is moot." (*Id.* at pp. 638-639.)

We cannot provide any effective relief to Father by ordering the juvenile court to take the action it has already taken.  The appeal is therefore moot.

## DISPOSITION

The Department's motion to dismiss the appeal is granted.


STONE, J.

We concur:


MARTINEZ, P. J.


SEGAL, J.

9